1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    HENRY C. HAYES,                        Case No.  19-cv-03372-WHO (PR)

8                  Plaintiff,               **ORDER GRANTING DEFENDANTS'
                                            MOTION FOR LEAVE FOR
9         v.                                RECONSIDERATION; GRANTING
                                            DEFENDANTS' MOTION FOR
10   MAURICIO MARTINEZ, et al.,             SUMMARY JUDGMENT**

11                Defendants.               Re: Dkt. Nos. 33, 46, 47

12

13          Defendants seek reconsideration of my January 19, 2022 order directing Plaintiff Henry C.

14   Hayes to file an amended complaint, and seek to have me rule on defendants' motion for summary

15   judgment.  (*See* Dkt. No. 46.)  Hayes opposes the motion and asks me to declare defendants'

16   motion moot.  (*See* Dkt. No. 47.)  For the reasons discussed below, I am obliged to GRANT

17   defendants' motion for leave to file a motion for reconsideration because precedent forecloses my

18   attempt to resolve the merits more efficiently.  Having granted defendants' motion for leave, I

19   rescind the January 19, 2022 order and GRANT Defendants' motion for summary judgment.

20                              **I.      BACKGROUND**

21          Hayes alleges that various medical and correctional staff at Pelican Bay State Prison

22   violated his rights under the Eighth Amendment when they forced him to wear prison-issued

23   underwear, which contains synthetic materials to which he is allergic.  Defendants moved for

24   summary judgment on grounds that Hayes failed to administratively exhaust his claims before

25   filing suit.  (Dkt. No. 33.)  Without expressly ruling on the motion for summary judgment, I

26   referred the matter for settlement.  (*See* Dkt. Nos. 39, 42.)  The case did not settle.  (*See* Dkt. Nos.

27   41, 44.)  Thereafter, I issued an order directing Hayes to file an amended complaint, noting that

28   Hayes may be able to rely on the exhaustion of the claims he accomplished after the filing of this

United States District Court
Northern District of California

1    suit.  (Dkt. No. 33 at 1.)  Defendants seek reconsideration of that order, arguing that the proper

2    remedy for an inmate's failure to follow the Prison Litigation Reform Act's pre-suit exhaustion

3    requirement "is an immediate dismissal of the action without prejudice, and not to hold the

4    litigation in abeyance to allow exhaustion and allow the inmate to amend solely to allege he has

5    since exhausted."  (Dkt. No. 46 at 1.)

## II.    MOTION FOR RECONSIDERATION

7           Under Civil Local Rule 7-9, "[b]efore the entry of a judgment adjudicating all of the claims

8    and the rights and liabilities of all the parties in a case, any party may make a motion before a

9    Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any

10   interlocutory order on any ground set forth in Civil L.R. 7-9 (b)."  Civil L.R. 7-9(a).  The Local

11   Rule further directs that:

> [t]he moving party must specifically show reasonable diligence in bringing the motion, and one of the following:
>
> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

           Defendants, having diligently brought this motion, cite controlling case law which holds

that if an inmate has not exhausted available administrative remedies before filing a federal suit,

the district court must dismiss the action without prejudice, rather than provide the inmate an

opportunity to amend the complaint.  *See, e.g.*, *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir.

2002) ("While it is true that requiring dismissal may, in some circumstances, occasion the

expenditure of additional resources on the part of the parties and the court, it seems apparent that

Congress has made a policy judgment that this concern is outweighed by the advantages of

United States District Court
Northern District of California

1   requiring exhaustion prior to the filing of suit."). As a result, I must follow that precedent and

2   grant defendants' motion for reconsideration. I deny Hayes's request to declare defendants'

3   motion for reconsideration moot (*see* Dkt. No. 47 at 1). I will now rule on defendants' motion for

4   summary judgment. *Brady v. AutoZone Stores*, 960 F.3d 1172, 1173 (9th Cir. 2020) (an action is

5   moot where issues are no longer live or the parties lack a legally cognizable interest in the

6   outcome.)

7                     **III.    MOTION FOR SUMMARY JUDGMENT**

8            Hayes alleges that his Eighth Amendment rights were violated when he was forced to wear

9   prison-issued underwear which contains materials to which he is allergic.[1] Defendants move for

10  summary judgment on grounds that Hayes failed to administratively exhaust his claims before

11  filing suit. (Dkt. No. 33.) I will grant summary judgment in defendants' favor because Hayes

12  failed to administratively exhaust his claims.

13  A.       FACTUAL BACKGROUND

14           1.   Medical Claim

15           On April 6, 2019, Hayes was strip-searched by defendant Harris prior to Hayes entering

16  the prison visiting area. (Compl., Dkt. No. 1 at 8.) Harris discovered that Hayes was wearing his

17  own personal cotton underwear. (*Id*.) Soon after, defendant Nelson approached Hayes and

18  informed him that his prison cell had been searched and that state-issued boxers had been found.

19  (*Id*.) Nelson advised Hayes that based on prison policy, he was required to wear the state-issued

20  boxers. (Mot. for Summ. J. (MSJ), Hasan Decl., Dkt. No. 33-1, Ex. D at 60:9–61:6.)

21           Hayes wore the state-issued boxers during a visit the next day and suffered an allergic

22  reaction. (*Id*. at 65:21–68:10.) Four days later, Hayes was seen by defendant RN Ramirez who

23  supplied Hayes with ointment. (Compl. at 9.) On April 17th, Hayes was seen by defendant Dr.

24  Martinez who issued a medical note for Hayes to wear cotton underwear: "Please allow patient to

25  use cotton briefs." (Compl., Ex. 3.)

26           On May 5, Hayes, wearing his cotton underwear, proceeded to the visiting area with Dr.

27  _____

28  [1] Defendants provided Hayes with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc). (Dkt. No. 33-2.)

United States District Court
Northern District of California

1   Martinez's medical note.  (Compl. at 10.)  Hayes was approached by defendant Fillipia, who

2   informed Hayes that the medical note was rejected.  (*Id*.)  Hayes was ordered to change into the

3   state-issued boxers which caused him further outbreaks.  (*Id*.)

4         2.     Appeals/Grievances

5        Hayes filed three appeals in response to the events outlined above.  On April 10, 2019,

6   Hayes submitted appeal PBSP-D-19-00849 (Appeal 849), complaining of harassment by

7   defendant Harris based on his medical condition.[2]  (Compl., Ex. 1.)  On May 28, 2019, the appeal

8   was granted in part and denied in part at the second level review.  (Hasan Decl., Ex A at 8–9.)

9   The appeal decision ordered defendant Harris to leave Hayes alone but stated that Hayes was not

10   exempted from the prison's underwear policy.  (*Id*.)  On June 2, 2019, Hayes appealed to the third

11   level of review, complaining that Dr. Martinez's medical note was rescinded despite his continued

12   medical condition.  (*Id*. at 10–13.)  On August 13, 2019, the third-level decision was issued,

13   denying the appeal.  (*Id*. at 5–6.)

14        Hayes filed appeal PBSP-D-01072 (Appeal 1072) on May 5, 2019, which he termed an

15   emergency appeal, complaining that defendant Fillipia forced him to wear the state-issued boxers

16   despite the medical note from Dr. Martinez.  (Compl., Ex. 5.)  The appeal was rejected because it

17   was missing supporting documentation.  (Hasan Decl., Ex B at 36.)  Hayes was also informed that

18   his appeal did not meet the criteria for processing as an emergency appeal.  (*Id*. at 35.)  Hayes

19   resubmitted his appeal, and on June 10, 2019, the appeal was cancelled because it was deemed to

20   be a duplicate of Appeal 849.  (*Id*. at 30.)

21        Hayes filed healthcare grievance PBSP-HC-19000174 (Grievance 174) on May 21, 2019.

22   (Hasan Decl., Ex C at 45.)  In his appeal, Hayes complained that his medical note was rescinded

23   without any medical evaluation.  (*Id*. at 47.)  On July 25, 2019, the appeal was denied at the

24   institutional level of review.  (*Id*. at 43–44.)  The decision noted that Hayes's medical records

25   presented no history of a polyester allergy and his medical notes showed no medical indication for

26

27   _____

28   [2] The appeal was initially rejected because it was missing supporting documentation.  (Hasan
Decl., Ex A at 20.)  It appears that Hayes resubmitted the appeal with supporting documentation.
(Compl., Ex. 1 at 18.)

United States District Court
Northern District of California

1    cotton underwear.  (*Id.*)  On September 25, 2019, Hayes's appeal was denied at the headquarters

2    level of review for the same reasons.  (*Id.* at 41–42.)

3    B.    STANDARD OF REVIEW

4         Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

5    that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

6    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the

7    outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

8    material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

9    the nonmoving party.  *Id.*

10        The party moving for summary judgment bears the initial burden of identifying those

11   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

12   issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving

13   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

14   reasonable trier of fact could find other than for the moving party.  On an issue for which the

15   opposing party by contrast will have the burden of proof at trial, as is the case here, the moving

16   party need only point out "that there is an absence of evidence to support the nonmoving party's

17   case."  *Id.* at 325.

18        Once the moving party meets its initial burden, the nonmoving party must go beyond the

19   pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a

20   genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over

21   material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."

22   *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine

23   issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party

24   has the burden of identifying, with reasonable particularity, the evidence that precludes summary

25   judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to

26   a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

27   C.    DISCUSSION

28        Hayes argues that defendants were deliberately indifferent to his medical needs.

United States District Court
Northern District of California

5

1    Defendants assert that Hayes failed to exhaust his appeals prior to filing this case, his emergency

2    appeal was never exhausted, and the appeals failed to name all the defendants.[3]  Hayes counters

3    that his administrative remedies were effectively unavailable, and he is not required to name every

4    defendant in an appeal.  (Pl.'s. Opp. to MSJ, Dkt. No. 34 at 3–4.)

5         The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust their administrative

6    remedies properly before filing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

7    "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

8    other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

9    administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is

10   mandatory and a prisoner's failure to comply with this requirement cannot be excused by the

11   courts.  *Ross v. Blake*, 136 S. Ct. 1850, 1856–58 (2016).

12        Proper exhaustion requires using all steps of an administrative process and complying with

13   "deadlines and other critical procedural rules."  *Woodford*, 548 U.S. at 90.  The State of California

14   provides its prisoners the right to appeal administratively "any policy, decision, action, condition or

15   omission by the [CDCR] or its staff that the inmate . . . can demonstrate as having a material

16   adverse effect upon his or her health, safety, or welfare."  15 Cal. Code Regs. (CCR) § 3084.1(a)

17   (repealed eff. June 1, 2020).[4]  In order to exhaust available administrative remedies within this

18   system, a prisoner must proceed through several levels of appeal:  (i) informal review, submitted on

19   a CDC 602 inmate appeal form; (ii) first formal-level appeal, to an institution appeals coordinator;

20   (iii) second formal-level appeal, to the institution's warden; and (iv) third formal level appeal, to

21   the Director of the CDCR.  *See id.* § 3084.7; *Brodheim v. Cry*, 584 F.3d 1262, 1264–65 (9th Cir.

22   2009).  A prisoner exhausts the appeal process when he completes the third level of review.  15

23   CCR § 3084.1(b) (repealed eff. June 1, 2020); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

24

United States District Court
Northern District of California

25   [3] Because I find the claims unexhausted, I need not address defendants' remaining argument.

26
27   [4] The regulations setting out the administrative remedies process for California prisoners was substantially restructured and became effective on June 1, 2020.  Because the relevant period applicable to this case is prior to the restructuring, I refer to the previous statutory scheme where
28   applicable.

1    Prisoners may also file complaints regarding healthcare policies, decision, actions,

2   conditions, or omissions using a CDCR Form 602 HC.  15 CCR §§ 3999.226, 3999.227(a).  Such

3   complaints are subject to two levels of review — an institutional level of review and a headquarters

4   level of review.  *Id.*  Healthcare grievances are subject to a headquarters' disposition before

5   administrative remedies are deemed exhausted.  *See id.* § 3999.226(g).

6    Administrative exhaustion is measured "at the time the action is filed."  *Andres v. Marshall*,

7   867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam).  A court action is filed when the prisoner

8   "submits" or "tender[s]" the complaint to the court, not when it is "formally filed" by the court

9   clerk, which can occur later.  *See Vaden v. Summerhill*, 449 F.3d 1047, 1050–51 (9th Cir. 2006).

10   Where a prisoner is proceeding *pro se*, the complaint is deemed constructively filed on the date the

11   prisoner signs the document and gives it to prison officials for mailing.  *See Houston v. Lack*, 487

12   U.S. 266, 276 (1988) (establishing the mailbox rule); *Douglas v. Noelle*, 567 F.3d 1103, 1104 (9th

13   Cir. 2009) (holding that the mailbox rule applies to Section 1983 suits filed by *pro se* prisoners).

14   The PLRA requires exhaustion before the filing of a complaint, and a prisoner does not comply

15   with this requirement by exhausting available remedies during the course of the litigation.

16   *McKinney v. Carey*, 311 F.3d 1198, 1199–1200 (9th Cir. 2002).  If a prisoner has not completed

17   his or her available administrative remedies *before* filing a complaint, the court must dismiss the

18   action without prejudice.  *Id.* at 1200–01.

19    1.    Appeal 849 and Grievance 174

20    Hayes filed his 42 U.S.C. §1983 complaint in this Court on June 5, 2019.[5]  Appeal 849 was

21   denied at the final level of review on August 13, 2019 — over two months after Hayes filed his

22   complaint.  Because Hayes exhausted this claim after the complaint was filed, it is unexhausted for

23   purposes of the PLRA.  *See McKinney*, 311 F.3d at 1199.

24    Grievance 174 is similarly unexhausted for purposes of the PLRA.  It was denied at the

25   final level of review on September 25, 2019 — over three months after Hayes filed his complaint.

26

27   _____

28   [5] June 5, 2019 is the date Hayes signed his complaint.  (Compl. at 15.)  Based on the mailbox rule, the complaint is deemed constructively filed on the date Hayes signed the document.  *See Houston*, 487 U.S. at 276.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    Hayes contends that administrative remedies were effectively unavailable to him, forcing

2    him to file his complaint prior to exhaustion. (Compl. at 7.) He explains that he was forced to file

3    "three appeals covering one issue" and he was forced to contend with "pressure and intervention"

4    at all levels of management. (*Id.*) However, his arguments lack support. It is evident that

5    administrative remedies were available to Hayes — two of his appeals were exhausted, albeit after

6    Hayes filed his complaint. Moreover, his claim that he faced pressure and intervention from

7    management is conclusory. It is true that prisoners are not obligated to exhaust "when prison

8    administrators thwart inmates from taking advantage of a grievance process through machination,

9    misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1863. It is also true that exhaustion can be

10   excused when "an administrative scheme might be so opaque that it becomes, practically

11   speaking, incapable of use." *Id.* at 1859. But Hayes identifies no specific threat or act of

12   intimidation, or what specifically rendered the process unavailable. A plaintiff's conclusory

13   explanation for failing to exhaust is insufficient to create a triable issue of fact. *Draper v. Rosario*,

14   836 F.3d 1072, 1080 (9th Cir. 2016). For these reasons, Appeal 849 and Grievance 174 remain

15   unexhausted.

16          2.      Appeal 1072

17   The record establishes that Appeal 1072 was deemed a non-emergency and subsequently

18   cancelled on June 10, 2019, at the second level of review.[6] (Hasan Decl., Ex. B at 30.) Hayes

19   contends that his failure to exhaust should be excused because once his appeal was improperly

20   screened, the existing administrative remedies were made effectively unavailable to him. (Opp. at

21   7–11.) Defendants counter that it was properly screened, and, in any event, Hayes was still

22   required to appeal the cancellation. (Defs.' Reply to Pl.'s Opp., Dkt. No. 37 at 3–6.)

23   Hayes appears to make two arguments to explain his inability to exhaust: (1) his appeal

24   was improperly deemed a non-emergency; and (2) the appeal was improperly cancelled as a

25   duplicate. Both arguments lack merit.

26

27   ---

28   [6] The Court notes that Hayes filed his complaint on June 5, 2019, prior to receiving a decision at the second level of review. Thus, whether or not the grievance was properly cancelled, it was unexhausted at the time the complaint was filed.

United States District Court
Northern District of California

1          With respect to the first argument, Hayes insists that his appeal should have been

2   processed as an emergency appeal.  An appeal should be "processed as an emergency appeal"

3   when "circumstances are such that the regular appeal time limits would subject the inmate . . . to a

4   substantial risk of personal injury or cause other serious and irreparable harm."  15 CCR §

5   3084.9(a)(1) (repealed eff. June 1, 2020).  "Emergency circumstances include, but are not limited

6   to:  [¶] (A) [t]hreat of death or injury due to enemies or other placement concerns [and] [¶] (B)

7   [s]erious and imminent threat to health or safety."  *Id.*  It is the appeals coordinator who is the

8   arbiter of whether an administrative appeal is properly classified as an emergency appeal.  *Id*. §

9   3084.9 (a)(3).

10         Here, Hayes's appeal did not contain clear allegations that he was facing a substantial risk

11  of injury or serious irreparable harm.  In the appeal, Hayes stated that Defendant Fillipia rejected

12  his medical note and he was ordered to return to his cell and put on state-issued underwear.

13  (Hasan Decl., Ex B at 32–33.)  As a result, Hayes wrote that he "suffered the effects of pain and

14  soreness to my skin."  (*Id*. at 33.)  While that was clearly unpleasant for Hayes, it does not appear

15  improper for the appeal to have been classified as a non-emergency.  And although Hayes wrote

16  that his appeal was an emergency, "Emergency Appeal per 15 CCR 3084.9(a)(1)(B), Serious and

17  imminent threat to health, based upon denial of medical chrono," it is for the appeals coordinator,

18  not the prisoner, to determine whether an administrative appeal is appropriately classified as an

19  emergency appeal.  *See* 15 CCR § 3084.9(a)(3).

20         Hayes was not thwarted from properly exhausting his available remedies.  The undisputed

21  facts in the record show that after the appeal was initially rejected for lack of supporting

22  documentation and simultaneously deemed a non-emergency, Hayes resubmitted the appeal with

23  the relevant supporting documentation.  (Hasan Decl., Ex. B at 36–37; Ex. D at 115:5–7.)  Thus,

24  Hayes was not prevented from exhausting his appeal.

25         With respect to the cancellation of the appeal as a duplicate, the evidence submitted by

26  defendants shows that Hayes did not file an appeal challenging the cancellation of Appeal 1072.

27  The notice cancelling his appeal informed him that he could appeal the cancellation:  "a separate

28  appeal can be filed on the cancellation decision."  (Hasan Decl., Ex. B at 30.)  Hayes, however,

did not do so.  *See* 15 CCR § 3084.1(b) ("a cancellation or rejection decision does not exhaust

United States District Court
Northern District of California

1   administrative remedies.") (repealed eff. June 1, 2020).

2         Hayes cites to *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010), in support of his

3   argument that once Appeal 1072 was improperly screened as a duplicate and cancelled,

4   administrative remedies were made unavailable to him.  That is not correct.  The cancellation itself

5   did not render the administrative process "unavailable" because Hayes still had some remaining

6   remedy — he could have appealed the cancellation.  In clarifying its decision in *Sapp*, the Ninth

7   Circuit held in *Wilson v. Zubiate*, 718 F. App'x 479, 482 (9th Cir. 2017), that "at the time *Sapp*

8   was decided, an improper screening left the inmate with no remedy." *Id*. at 482.  In contrast, the

9   prisoner in *Wilson* "had the possibility of appealing the cancellation decision and therefore cannot

10  show that he was 'thwarted by improper screening' under *Sapp*[.]"

11        Here, Hayes had the possibility of appealing the cancellation.  The notice cancelling

12  Appeal 1072 gave instructions for appealing the cancellation.  (Hasan Decl., Ex. B at 30.)  During

13  his deposition, Hayes affirmed that he had access to the appeals process but chose not to appeal

14  the cancellation because he felt it would have been fruitless.  (*Id.*, Ex. D at 113:23–116:15.)  Based

15  on his testimony, there is nothing to indicate that Hayes was unaware his appeal had been

16  cancelled or that he was unaware he could appeal the cancellation.  Had he appealed the

17  cancellation, it is possible that his appeal would have been reinstated insofar as the two appeals

18  referenced different events by different officers.  While prison officials may have discredited

19  Hayes's explanation and still upheld the cancellation, that was not a foregone conclusion.

20  Accordingly, Appeal 1072 is also deemed unexhausted in this case.  Defendants have shown that

21  Hayes has not exhausted his administrative remedies, therefore, summary judgment will be

22  granted in defendants' favor.

                          **IV.   CONCLUSION**

23        Defendants' motion for leave to file motion for reconsideration (Dkt No. 46) is

24  GRANTED.  The January 19, 2022, order (Dkt. No. 45) is rescinded.  Defendants' motion for

25  summary judgment (Dkt. No. 33) is GRANTED.  The Clerk shall terminate Dkt. Nos. 46 and 47,

26

27

28

1    enter judgment in favor of defendants, and close the file.

2         **IT IS SO ORDERED.**

3    Dated: April 1, 2022

4

5                                WILLIAM H. ORRICK
                                 United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California